UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

GABRIELA VAZQUEZ,

Plaintiff,

v.                                                    Case No.   3:20CV00073

GREENE COUNTY SCHOOL BOARD,                           DEMAND FOR JURY TRIAL

Defendant.

**COMPLAINT**

Plaintiff Gabriela Vazquez respectfully moves for judgment against Defendant GREENE

COUNTY SCHOOL BOARD ("GCSB" or "Defendant") as follows:

I.      **SUMMARY OF ACTION**

1.      Plaintiff presents claims of unlawful discrimination and retaliation on the basis of

sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

("Title IX") and unlawful discrimination on the basis of race, color, or national origin in

violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI").

2.      Plaintiff alleges Defendant violated Title IX by its acts and omissions after

receiving notice that Plaintiff was sexually assaulted on campus during school hours by a male

student.

3.      Plaintiff alleges that Defendant violated Title IX by, inter alia, failing to

investigate the sexual assault after receiving notice; ignoring evidence of the sexual assault,

including Plaintiff's statements, security video footage of the assault, and a Snapchat message from the assailant stating that he raped Plaintiff; and requiring Plaintiff to be present in classes and/or on campus with her assailant despite her requests that he be separated from her. Defendant also discriminated and retaliated against Plaintiff for complaining about the sexual assault by suspending her for ten (10) school days.

4.     The Fourth Circuit holds that when an institution's response—or lack thereof—to known student-on-student sexual harassment is "clearly unreasonable," the institution has contravened Title IX. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018).

5.     The Supreme Court holds that student-on-student sexual harassment, if sufficiently severe, constitutes sex discrimination actionable under the Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). Thus, a complaint of student-on-student sexual assault is a complaint of sex discrimination, protected from retaliation under Title IX.

6.     The Supreme Court and the Fourth Circuit hold that when a federal funding recipient retaliates against a person because she complains of sex discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 125 S.Ct 1497, 161 L.Ed.2d 361 (2005); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 693 (4th Cir. 2018).

7.     Plaintiff's complaints of sexual assault were protected activity under Title IX.

8.     Defendant's response to learning of the sexual assault on Plaintiff was clearly unreasonable.

9.     Plaintiff seeks legal and equitable relief as allowed under Title IX.

2

10.     Plaintiff, who is Latina, alleges Defendant violated Title VI by, inter alia, failing to investigate Plaintiff's report of sexual assault, failing to discipline the assailant for sexually assaulting Plaintiff, suspending Plaintiff from high school in response to Plaintiff's report of sexual assault, ignoring evidence of the assault and concluding that Plaintiff had engaged in consensual sex, and in other manners, whereas when a white female student subsequently reported sexual assault by the same male student who assaulted Plaintiff, Defendant investigated the report, disciplined the assailant for the assault, did not suspend or penalize the white female student in any way, and concluded that the white female student did not engage in consensual sex.

11.     Plaintiff seeks legal and equitable relief as allowed under Title VI.

II.     **JURISDICTION AND VENUE**

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

13.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) since the acts and omissions giving rise to this lawsuit have taken place in this division in the Western District of Virginia.

14.     Defendant is subject to personal jurisdiction in the Commonwealth of Virginia. Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over that Defendant to comply with traditional notions of fair play and substantial justice.

III.    **PARTIES**

15.     Plaintiff is a resident of Virginia. She is Latina with a Mexican heritage, and the grandchild of migrant farmworkers. She attended classes at William Monroe High School in

Greene County from the 2016-17 school year until May 2019, after which she completed her high school degree by attending classes at Piedmont Valley Community College.

16.     Defendant Greene County School Board ("GCSB") is a school board organized and existing under the laws of Virginia with offices located in Greene County. GCSB is also known as Greene County Public Schools. Under Virginia law, GCSB is charged with supervision of the schools in its division, Virginia Code § 22.1–28, including William Monroe High School, and GCSB is a corporate entity vested with the power to sue and be sued. Virginia Code § 22.1–71. GCSB is a recipient of federal funds for the purposes of Title IX and Title VI.

## IV.    FACTUAL ALLEGATIONS

### A.    Background

17.     At all times relevant herein, Plaintiff was a minor. In the fall of 2018, she was 16 years old and a junior at William Monroe High School.

18.     At all times relevant herein, Principal Kathryn Brunelle was the principal at William Monroe High School.

19.     At all times relevant herein, Principal Brunelle was an employee of GCSB acting in the scope of her employment as Principal of William Monroe High School. She was the highest-ranking school official at William Monroe, and was the first line of responsibility for ensuring that the students in her school are safe and protected from sexual assault and other forms of sex discrimination.

20.     At all times relevant herein, Principal Brunelle had the authority to institute corrective measures on the Defendant's behalf to remedy the effects of the sexual assault and other forms of discrimination on Plaintiff.

4

**B.     Sexual Harassment and Retaliation**

21.     On or about September 11, 2018, during school hours, a male student texted Plaintiff to meet him in a stairwell at William Monroe High School.

22.     Plaintiff met the male student in the stairwell.

23.     Plaintiff is approximately 5 foot 1 inches tall.

24.     The male student was more than 6 feet tall and weighed more than approximately 250 pounds.

25.     In the stairwell, the male student kissed Plaintiff and she did not object as they had kissed on prior occasions.

26.     After the male student and Plaintiff kissed, the male student sexually assaulted Plaintiff by forcing her to have oral sex and sexual intercourse against her will.  Prior to this assault Plaintiff had never indicated any of this activity was welcome.

27.     The male student began the assault by pushing Plaintiff's head and forcing Plaintiff to perform oral sex on him against her will and without her consent.

28.     The male student then pulled down Plaintiff's pants, pushed her over, and further sexually assaulted Plaintiff by having sexual intercourse with her against her will and without her consent.

29.     During the sexual assault, Plaintiff repeatedly communicated that the sexual activity was unwelcome.  Plaintiff cried throughout the assault and specifically said to the male student, "No," and "I don't want to." Plaintiff also attempted to bargain with the male student to try to get him to stop.

30.     Plaintiff also tried to push the male student off of her but was unable to do so.

5

31.     At all times relevant herein, the stairwell where the assault occurred was monitored by security video cameras.

32.     After the sexual assault, Plaintiff returned to class.

33.     Because she was in shock and had blacked out some or all of the assault from her memory due to the trauma she experienced, Plaintiff did not initially disclose the sexual assault to school officials.

34.     After the sexual assault, the male student sent Plaintiff a Snapchat message in which the male student admitted that he raped Plaintiff.

35.     Plaintiff eventually confided in two close friends about the assault.

36.     One of Plaintiff's friends confided to his or her mother that Plaintiff had been sexually assaulted at school.

37.     The friend's mother relayed this information to a school guidance counselor. Upon information and belief, the mother told the guidance counselor that Plaintiff was sexually assaulted at school.

38.     In response to that report of the sexual assault of Plaintiff, on Friday, November 30, 2018, Guidance Counselor Angelina Santus and a School Resource Officer questioned Plaintiff at school about the assault.

39.     During the November 30, 2018 interview, Plaintiff reported that she had been sexually assaulted by the male student against her will. Plaintiff reported the sexual assault was unwelcome and not consensual. In addition, Plaintiff reported that the male student pushed Plaintiff and that Plaintiff cried throughout the assault.

40.     During the November 30 interview, Plaintiff told Guidance Counselor Santus and

6

the School Resource Officer about the Snapchat message from the male student admitting that he raped Plaintiff.

41.     Later that day, on November 30, Principal Brunelle came to Plaintiff and asked to see the Snapchat message from the male student. Plaintiff showed Principal Brunelle the message.

42.     Principal Brunelle took a photograph of the Snapchat message from the male student admitting that he raped Plaintiff.

43.     Also on November 30, 2018, Principal Brunelle and other school administrators and employees spoke with Plaintiff's mother in person, without Plaintiff present. During this meeting, Principal Brunelle informed Plaintiff's mother that Plaintiff told Guidance Counselor Santus that Plaintiff had been sexually assaulted by a male student. During this meeting, Principal Brunelle further told Plaintiff's mother that there was a video of the incident and that there would be an "investigation." Plaintiff's mother was not shown the video.

44.     Plaintiff's report to school officials on November 30, 2018 in which she complained that she had been sexually assaulted by the male student against her will was protected activity under Title IX.

45.     On Monday, December 3, 2018, Plaintiff was again interviewed about the sexual assault, this time by Principal Brunelle, Assistant Principal Gina Roth, Vice Principal Kris Wimmer, and Guidance Counselor Santus.

46.     During the December 3, 2018 interview, Plaintiff again reported that she had been sexually assaulted by the male student against her will. Plaintiff again reported the sexual assault was unwelcome and not consensual. In addition, Plaintiff reported that the male student pushed

7

Plaintiff and that Plaintiff cried throughout the assault.

47.     During the December 3, 2018 interview, Principal Brunelle told Plaintiff that she had reviewed a video of the assault taken from the stairwell security cameras. Plaintiff was not shown the video.

48.     In addition, at the December 3, 2018 interview, Principal Brunelle had a printed copy of the photograph she took of the Snapchat message from the male student in which the male student admitted that he raped Plaintiff.

49.     During the December 3, 2018 interview, Principal Brunelle and the other school officials present engaged in offensive and harassing conduct toward Plaintiff in which they attempted to shame Plaintiff while she reported the sexual assault.  Principal Brunelle led an interrogation of Plaintiff regarding the events of the sexual assault, forcing her to relive those events in their presence. When Plaintiff was unable to recall specific facts about the assault in response to Principal Brunelle's interrogation, which is common among victims of sexual assault, Principal Brunelle and other officials mocked her, shamed her, and insinuated that Plaintiff was not being truthful. Principal Brunelle then required Plaintiff to respond to questions in a "yes or no" format and would not allow her to say "I don't know," which was again harmful to Plaintiff as a victim of sexual assault. Principal Brunelle then continued to shame Plaintiff and asked questions that were loaded with the assumption that the sexual assault was actually a consensual act by Plaintiff, which was likewise harmful to the Plaintiff. For example, Principal Brunelle asked Plaintiff if she "liked" the assailant and found him attractive. When Plaintiff responded that she did not, Principal Brunelle and Guidance Counselor Santus scorned her and asked sarcastically, "Why would you have sex with someone you don't like?" They then

commented that "things were different in our day."

50.     As a result of the offensive and harassing conduct by Defendant's administrators and employees, Plaintiff suffered significant emotional trauma and distress.

51.     Later that same day, December 3, 2018, Guidance Counselor Santus and Assistant Principal Roth notified Plaintiff that Defendant's school officials were suspending Plaintiff for ten (10) school days for allegedly "violating" a "sexual conduct policy."

52.     Upon information and belief, the decision to suspend Plaintiff for ten (10) school days was ultimately made by Principal Brunelle, and Principal Brunelle also suspended the male student who assaulted Plaintiff for the same time period for the same alleged offense.

53.     Plaintiff did not violate any school policy.

54.     Prior to informing Plaintiff of their decision to suspend her, Defendant's school officials never provided notice to Plaintiff that she was being accused of an offense, that they were investigating her conduct, or that she may be subject to discipline. In fact, Defendant's officials began the interview by falsely telling Plaintiff that she was in a "safe space" where she could report the conduct to them.

55.     Defendant's school officials suspended Plaintiff because she reported the sexual assault on November 30, 2018 and/or December 3, 2018.

56.     Plaintiff served the suspension from December 4, 2018 through December 17, 2018.

57.     When Plaintiff returned to class on December 18, 2018, as a result of Defendant's officers' previous conduct as well as their continuing conduct, Defendant failed to provide Plaintiff with a school environment such that Defendant deprived her of access to the educational

9

opportunities and/or benefits provided by the school.

58.     Upon Plaintiff's return following the suspension, it was apparent that the Defendant's school officials had failed to maintain Plaintiff's privacy and that the school community was aware of the identical suspensions to her and the male student who assaulted her for purportedly engaging in consensual sex on school property during the school day.

59.     In addition, Defendant's school officials required Plaintiff to continue attending class and to remain on campus with the male student who assaulted her despite her request that she not be required to be in his presence.

60.     Defendant's school officials' mistreatment of Plaintiff and decision to suspend her caused Plaintiff to suffer "secondary victimization" and caused her to suffer severe trauma and/or exacerbated the trauma she suffered as a result of the sexual assault. Plaintiff was diagnosed with Post Traumatic Stress Disorder arising from the sexual assault and the secondary victimization by Defendant's school officials.

61.     Seeing the administrators at school who had had harassed her while reporting the sexual assault, and punished her for reporting her sexual assault, caused Plaintiff to experience multiple panic attacks at school during the spring 2019 semester.

62.     As a result of the Defendant's conduct toward Plaintiff, Plaintiff suffered harassment from other students based on her sex, and which caused her additional trauma.  For example, students questioned her about her sexual conduct and also accused her of lying about the sexual assault.  Students mocked Plaintiff and laughed at her on the school bus. One student actually created an Instagram account titled "Gaby_Cries_Wolf," which was obviously accusing her of fabricating her report of sexual assault.

10

**C.      Additional Facts Bearing on Discrimination on Grounds of Race, Color, or National Origin**

63.     In approximately early February 2019, a white female student reported to school authorities that she had been sexually assaulted on campus in a bathroom by the same male student who had sexually assaulted Plaintiff.

64.     The white female student made this report of sexual assault to the same school officials to whom Plaintiff, a Latina, had previously reported her sexual assault by the same male student.

65.     In response to Plaintiff's report of sexual assault by this male student, Defendant's officials and employees harassed, shamed, and suspended Plaintiff, and expressly and implicitly perpetuated negative stereotypes of Latinas. By contrast, in response to the white female student's subsequent report of sexual assault by the same male student, Defendant did not suspend or penalize in any way the white female student.

66.     In contrast to Defendant's action in requiring Plaintiff to continue attending classes with her assailant after her assault, upon information and belief Defendant did not require the white female student to continue attending classes with the assailant after he assaulted her.

67.     In contrast to Defendant's action of declining to investigate Plaintiff's report of sexual assault, Defendant investigated the white female student's report of sexual assault by the same male student.

68.     In these and other ways, Defendant through its response to Plaintiff's report of sexual assault discriminated against Plaintiff because of her race, color, and/or national origin.

69.     Defendant's response to Plaintiff's report of her sexual assault, including its

11

treatment of her, its disciplining her, and its refusing to take appropriate action to provide her with the appropriate educational environment, interfered with Plaintiff's ability to attend school and perform her studies and activities and ultimately caused her to cease attending classes on the William Monroe campus due to the threatening, humiliating, and hostile environment. Instead, Plaintiff attended classes at Piedmont Virginia Community College for her senior year of high school.

70.     The last day Plaintiff attended classes at William Monroe was the end of the spring 2019 semester, which was the end of her junior year.

71.     During Plaintiff's senior year, to avoid the student who assaulted her and the administrators who had punished her for reporting the assault at William Monroe, Plaintiff did all of her course work at Piedmont Valley Community College, including taking college-level courses.

72.     Plaintiff continues to receive treatment for mental health trauma subsequent to her sexual assault and Defendant's deliberate indifference thereto and retaliation for Plaintiff's reporting the sexual assault.

73.     Defendant's action of suspending Plaintiff in response to her sexual assault complaints was a result of actual intent to retaliate against Plaintiff for complaining about sex discrimination.

74.     Defendant's retaliation against Plaintiff for reporting the sexual assault ultimately deprived her of access to educational opportunities at William Monroe in violation of Title IX.

75.     Defendant's action of suspending Plaintiff and Defendant's other acts and omissions in response to her sexual assault complaints was a result of discrimination against

Plaintiff on the grounds of race, color, or national origin in violation of Title VI.

76. At all times relevant herein, the acts and omissions against Plaintiff were carried out by school officials acting within the scope of their employment and authority delegated to them by Defendant.

## VI. CLAIMS

### COUNT 1: VIOLATIONS OF TITLE IX (20 U.S.C. § 1681 et seq.)
### (Deliberate Indifference to Student-on-Student Sexual Harassment)

77. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

78. Title IX prohibits sex discrimination by recipients of federal education funding. The statute provides that "[n]o person ... shall, on the basis of sex, be ... subjected to discrimination under any education program ... receiving Federal financial assistance." 20 U.S.C. § 1681(a).

79. The Fourth Circuit holds that when an institution's response — or lack thereof — to known student-on-student sexual harassment is "clearly unreasonable," the institution has contravened Title IX. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018).

80. Defendant is an education program that receives Federal financial assistance for purposes of Title IX.

81. Plaintiff was subjected to harassment based on her sex when she was sexually assaulted at school by a male student on September 11, 2018.

82. The sexual assault of Plaintiff was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity.

83. At all times relevant herein, Principal Brunelle had the authority to institute

corrective measures on the Defendant's behalf to remedy the effects of the sexual assault on Plaintiff.

84. Defendant received actual notice of the sexual assault on Plaintiff from a parent of a friend of Plaintiff and from Plaintiff herself when she informed numerous school officials of the assault, including Principal Brunelle, on November 30 and December 3, 2018.

85. After receiving notice of the sexual assault, Defendant, through its administrators, including Principal Brunelle, failed to investigate the sexual assault; ignored evidence of the sexual assault, including a video of the sexual assault taken from a security camera, a Snapchat message from the assailant in which he admitted to raping Plaintiff, and statements from Plaintiff regarding the assault; investigated Plaintiff for fabricated and discriminatory charges of violating Defendant's sexual conduct policy without providing any notice to Plaintiff or an opportunity to be heard; asserted that Plaintiff "violated" Defendant's sexual conduct policy when she was sexually assaulted; suspended Plaintiff for ten (10) school days; failed to maintain Plaintiff's privacy so that other students were aware of Defendant's charges and suspension of Plaintiff for allegedly violating Defendant's sexual conduct policy by allegedly having consensual sex on school property during school hours; and failed to separate Plaintiff and her assailant upon her return to school after she requested that she have no contact with him, among other acts and omissions constituting discrimination and violating Plaintiff's rights under Title IX.

86. Defendant's acts and omissions were deliberately indifferent to the sexual assault suffered by Plaintiff and Plaintiff's rights under Title IX because Defendant's response was clearly unreasonable in light of the known circumstances.

87. Defendant's deliberate indifference to the sexual assault suffered by Plaintiff and

14

Plaintiff's rights under Title IX after receiving notice of the same subjected Plaintiff to and caused Plaintiff to suffer the discrimination described herein, beginning with the failure to investigate and the suspension of Plaintiff from school, and continuing with Defendant's failure to maintain Plaintiff's privacy and requiring Plaintiff upon her return to school to continue being on campus and/or attending class with her assailant despite her request to be separated from him

88.     Defendant's deliberate indifference through its acts and omissions excluded Plaintiff on the basis of sex from participation in, and denied Plaintiff on the basis of sex the benefits of, an educational program or activity by, inter alia, failing to investigate Plaintiff's report of sexual assault, suspending Plaintiff because of her report of sexual assault, and requiring Plaintiff to continue attending class with her assailant despite her request to be separated from him, in violation of Plaintiff's rights under Title IX.

89.     Defendant's deliberate indifference encouraged and promoted a hostile educational environment amongst the student body toward Plaintiff.

90.     Defendant's deliberate indifference caused Plaintiff to suffer emotional and other injuries.

91.     Plaintiff seeks damages, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under Title IX and all other such legal and equitable relief as the Court deems just and proper.

### COUNT 2: VIOLATIONS OF TITLE IX (20 U.S.C. § 1681 et seq.)
### (Sexual Harassment)

92.     Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

93.     Defendant was deliberately indifferent to, and engaged in, severe, pervasive, and

objectively offensive conduct against the Plaintiff based on her sex, and perpetuated negative female stereotypes, in several particulars, including: failing to properly investigate Plaintiff's complaint of sexual harassment; subjecting Plaintiff to a harsh and offensive interrogation regarding the sexual assault with several adult administrators in a small room from which she was not free to leave; mocking, shaming, and ridiculing Plaintiff when she reported the sexual assault; disciplining Plaintiff for violating the school's sexual conduct policy although she didn't violate any policy; issuing identical suspensions to Plaintiff and her assailant to give the false impression to the school community that she had engaged in consensual sex with her assailant; and, failing to maintain Plaintiff's privacy with regard to the investigation and suspension.

94.     Defendant's offensive conduct was not welcome by Plaintiff.

95.     Defendant's offensive conduct caused Plaintiff to suffer severe emotional trauma, and/or exacerbated the emotional trauma suffered by Plaintiff as a result of the sexual assault.

96.     Defendant's conduct deprived Plaintiff of access to the educational opportunities and benefits provided by the school. As a result of Defendant's harassment, Plaintiff suffered panic attacks when she saw the administrators who engaged in the offensive conduct on campus, and eventually caused Plaintiff to attend classes at PVCC rather than on campus for her senior year.

97.     Plaintiff seeks damages, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under Title IX and all other such legal and equitable relief as the Court deems just and proper.

**COUNT 3: VIOLATIONS OF TITLE IX (20 U.S.C. § 1681, et seq.)**
**(Retaliation)**

98.     Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

99.     Title IX prohibits sex discrimination by recipients of federal education funding. The statute provides that "[n]o person ... shall, on the basis of sex, be ... subjected to discrimination under any education program ... receiving Federal financial assistance." 20 U.S.C. § 1681(a).

100.     Defendant GCSB is a recipient of Federal financial assistance for the purposes of Title IX.

101.     When a federal funding recipient retaliates against a person because she complains of sex discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

102.     On November 30, 2018, Plaintiff complained of sex discrimination under Title IX when she reported being sexually assaulted on campus by a male student.

103.     Plaintiff's November 30 report was a protected activity under Title IX.

104.     On December 3, 2018, Plaintiff complained of sex discrimination under Title IX when she reported being sexually assaulted on campus by a male student.

105.     Plaintiff's December 3 report was a protected activity under Title IX.

106.     Plaintiff suffered an adverse action attributable to Defendant GCSB when she was suspended for 10 days.

107.     As a result of Plaintiff's protected activity, she suffered an adverse action attributable to Defendant GCSB when she was suspended for ten (10) days.

108.     Defendant suspended Plaintiff because of her protected activity of reporting sexual assault on campus by a male student.

109.     The suspension of Plaintiff is attributable to Defendant GCSB because the decision to suspend Plaintiff was made by Principal Brunelle or other school officials acting within the scope of their employment and authority granted to them by Defendant GCSB.

110.     Plaintiff seeks damages, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under Title IX and all other such legal and equitable relief as the Court deems just and proper.

### COUNT 4: VIOLATIONS OF TITLE VI (42 U.S.C. § 2000d et seq.)
### (Race, Color, and/or National Origin Discrimination )

111.     Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

112.     Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

113.     Defendant receives Federal financial assistance for the purposes of Title VI.

114.     Defendant is a "program or activity" for the purposes of Title VI because it is a "local educational agency," which is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State...." 42 U.S.C. § 2000d–4a(2)(B); 20 U.S.C. § 7801(26)(A).

115.    Defendant subjected Plaintiff to discrimination, and perpetuated negative stereotypes, on the ground(s) of race, color, and/or national origin when it suspended Plaintiff from school in response to Plaintiff's report of sexual assault by a male student, failed to investigate Plaintiff's report of sexual assault, required Plaintiff to remain on campus with and/or continue attending classes with her assailant, asserted Plaintiff had engaged in consensual sex despite her report and other evidence showing that she was the victim of a sexual assault, failed to discipline the assailant for assaulting Plaintiff, investigated Plaintiff without providing her notice of any charges against her or an opportunity to be heard, conducted the investigation and suspension of Plaintiff in a manner that failed to protect Plaintiff's privacy so that other students were made aware of the charges against her and suspension, and other manners of discrimination.

116.    Defendant excluded Plaintiff from participation in its school programs and activities on the ground(s) of race, color, and/or national origin when it suspended Plaintiff from school in response to Plaintiff's report of sexual assault by a male student, failed to investigate Plaintiff's report of sexual assault, and requiring Plaintiff to continue attending classes with her assailant, among other examples of discrimination.

117.    Defendant denied Plaintiff the benefits of its school programs and activities on the ground(s) of race, color, and/or national origin when it suspended Plaintiff from school in response to Plaintiff's report of sexual assault by a male student, failed to investigate Plaintiff's report of sexual assault, and requiring Plaintiff to continue attending classes with her assailant, among other examples of discrimination.

118.    The above discrimination, exclusion, and denial is shown by, among other

19

examples, Defendant's response to the white female student's subsequent complaint of sexual assault by the same male student who assaulted Plaintiff.

119.    In contrast to Defendant's response to Plaintiff's report of sexual assault, Defendant did not suspend or penalize the white female student in any way in response to her report of sexual assault by the same student; did not require the white female student to continue attending classes with the assailant; did not fail to investigate the white female student's report of sexual assault; did not charge the white female student with a violation of Defendant's sexual misconduct policy; and did not investigate the white female student for a violation of Defendant's sexual misconduct policy.

120.    Plaintiff seeks damages, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under Title VI and all other such legal and equitable relief as the Court deems just and proper.

## COUNT 5: VIOLATIONS OF TITLE VI (42 U.S.C. § 2000d et seq.)
### (Race, Color, and/or National Origin Harassment )

121.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

122.    Defendant was deliberately indifferent to, and engaged in, severe, pervasive, and objectively offensive conduct against the Plaintiff based on her race, color, and/or national origin, and perpetuated negative Latina stereotypes, in several particulars, including: failing to properly investigate Plaintiff's complaint of sexual harassment; subjecting Plaintiff to a harsh and offensive interrogation regarding the sexual assault with several adult administrators in a small room from which she was not free to leave; mocking, shaming, and ridiculing Plaintiff when she reported the sexual assault; disciplining Plaintiff for violating the school's sexual

conduct policy although she didn't violate any policy; issuing identical suspensions to Plaintiff and her assailant to give the false impression to the school community that she had engaged in consensual sex with her assailant; and, failing to maintain Plaintiff's privacy with regard to the investigation and suspension.

123.    Defendant's offensive conduct was not welcome by Plaintiff.

124.    Defendant's offensive conduct caused Plaintiff to suffer severe emotional trauma, and/or exacerbated the emotional trauma suffered by Plaintiff as a result of the sexual assault.

125.    Defendant's conduct deprived Plaintiff of access to the educational opportunities and benefits provided by the school. As a result of Defendant's harassment, Plaintiff suffered panic attacks when she saw the administrators who engaged in the offensive conduct on campus, and eventually caused Plaintiff to attend classes at PVCC rather than on campus for her senior year.

126.    The causal connection between the above harassment and Plaintiff's race, color, or national origin is shown by, among other examples, Defendant's response to the white female student's subsequent complaint of sexual assault by the same male student who assaulted Plaintiff. The white female student has a United States heritage, compared to Plaintiff's Mexican heritage.

127.    For example, in contrast to Defendant's response to Plaintiff's report of sexual assault, Defendant did not suspend or penalize the white female student in any way in response to her report of sexual assault by the same student; did not subject the white female student to a harsh and offensive interrogation regarding the sexual assault with several adult administrators in a small room from which she was not free to leave; did not mock, shame, and ridicule the white

female student when she reported the sexual assault; did not require the white female student to continue attending classes with the assailant; did not fail to investigate the white female student's report of sexual assault; did not charge the white female student with a violation of Defendant's sexual misconduct policy; did not investigate the white female student for a violation of Defendant's sexual misconduct policy; did not discipline the white female student for violating the school's sexual misconduct policy although she didn't violate any policy; did not issue identical suspensions to the white female student and her assailant to give the false impression to the school community that she had engaged in consensual sex with her assailant; and did not fail to maintain the white female student's privacy with regard to the investigation and suspension.

128.    Plaintiff seeks damages, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under Title VI and all other such legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief against Defendant:

A.    Declare Defendant's conduct to be in violation of Plaintiff's rights under Title IX and Title IV;

B.    Enter appropriate declaratory and injunctive relief against Defendant;

C.    Award Plaintiff compensatory damages in an amount that will fully compensate her for the physical injuries, mental distress, anguish, pain, humiliation, embarrassment, suffering, and concern that she has suffered as a direct and proximate result of Defendant's statutory violations;

D.      Enter a judgment against Defendant for such punitive damages as will properly
punish Defendant for the violations perpetrated upon Plaintiff as alleged herein, in
an amount that will serve as a deterrent to Defendant and others from engaging in
similar conduct in the future;

E.      Award Plaintiff prejudgment and post-judgment interest at the highest rates
allowed by law;

F.      Award Plaintiff all costs, litigation expenses, expert witness fees, and reasonable
attorney's fees;

G.      Assume continuing and indefinite jurisdiction to insure compliance with the terms
of the Orders requested herein;

H.      Award Plaintiff such other and further relief, including equitable, that this Court
deems just and proper.

I.      Any and all further relief permissible by law,

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all
claims and issues so triable.

Respectfully submitted,

GABRIELA VAZQUEZ,
By Counsel

Dated:        November 25, 2020

/s/Timothy Coffield_____
Timothy Coffield (VSB 83430)

23

COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiff

**CERTIFICATE**

I HEREBY CERTIFY that if service is not waived a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendant or its authorized agents at the following addresses, or any other addresses where Defendant may be found:

Dr. Andrea Whitmarsh
Superintendent
Greene County School Board / Greene County Public Schools
40 Celt Road
Stanardsville, VA 22973
Phone: 434-939-9000
Fax: 434-985-4686

/s/Timothy Coffield
Counsel for Plaintiff